UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**05-60590**

LANCER PARTNERS, L.P.,

    Plaintiff,

vs.                                CASE NO.: CIV-COHN

TOTAL FILM GROUP, INC.,

    Defendant.

MAGISTRATE JUDGE
SNOW

_____/

## COMPLAINT

Plaintiff, Lancer Partners, L.P. ("Partners"), through undersigned counsel, hereby sues Defendant, TOTAL FILM GROUP, INC. (the "Defendant"), and alleges as follows:

### JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this Complaint pursuant to 28 U.S.C. §§ 1334(b).

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (H), and (O).

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

### BACKGROUND FACTS

4. In 1993, Michael Lauer ("Lauer") formed a New York limited partnership which he eventually named Lancer Partners, L.P. under the laws of the State of New York. In November, 1997, Lauer formed Partners as a limited partnership under the laws of the State of Connecticut and he merged the two partnerships.

5. Partners was an investment fund in which limited partners contributed money to be invested in a portfolio of securities.

6. Lancer Management Group II, LLC ("Lancer II") served as Partners' general partner and investment manager.

7. Lauer was the founder and principal owner of Lancer II.

8. Lauer served as Lancer II's manager and thus as the *de facto* investment manager for Partners.

9. Lancer II's advisory fee for managing Partners was approximately 1% per year, and was calculated by multiplying Partners' NAV at the beginning of each fiscal quarter by 0.25%.

10. Lancer II also received an "incentive fee" equal to 20% of the net profits of Partners, as calculated on the last day of Partners' fiscal year.

11. Lancer Offshore Inc. ("Offshore") is a British Virgin Islands ("BVI") international business company incorporated in September 1995.

12. Lancer Management Group LLC ("LMG") managed Offshore.

13. This fee structure provided Lauer with both the incentive and the means to artificially inflate the value of Partners' holdings. A higher net asset value would result in higher fees; and the determination of the net asset value used to determine those fees rested with Lauer alone.

14. Lauer caused Partners to pursue a risky investment strategy focusing almost exclusively on small and micro-cap stocks with poor fundamentals.

15. These "fallen angels" included Fidelity First Financial Corporation, Biometrics Security Technology, Inc., SMX Corp., XtraCard Corp. and Total Film Group, Inc. (collectively

the "Target Companies").

16. All of these companies were traded on the "pink sheets" - the small, relatively illiquid market for micro-capital stocks.

17. The Target Companies had virtually no earnings. None of them made any material earnings from operations.

18. Only one of the Target Companies realized a profit and that was a result of cancellation of debt, not from operations.

19. Lauer manipulated the value of the Target Companies in order to inflate the net asset values of Partners, attract more investors, induce remaining investors not to redeem their shares, and generate additional management fees for Lancer II and, in turn, himself.

20. Lauer inflated the stated net asset value of Partners' holdings in the Target Companies in at least two ways.

21. First, Lauer made manipulative trades in these Target Companies at the end of trading sessions late in each month - a practice known as "marking the close."

22. Lauer placed orders for small numbers of shares in the thinly traded Target Companies at prices much higher than offered by anyone else in the market near the end of the trading days at the end of the period utilized to determine the net asset value of Partner's holdings for purposes of calculating fees.

23. Often this would be the only retail transaction in shares of the Target Companies during a single day.

24. Lauer used this "last trade price" as the per-share value of the Target Companies' shares and projected that value onto all of the shares in each Target Company held by Partners, thus inflating the stated net asset value of Partners.

3

25. These inflated net asset values for Partners in turn inflated the fees payable to Lauer and, convinced new investors to deposit new money into Partners and convinced current investors to maintain their investments in Partners.

26. The second method used by Lauer to inflate the net asset value of Partners' holdings was bogus accounting valuation.

27. The valuations commissioned and employed by Lauer failed to satisfy applicable standards in the valuation industry. These bogus evaluations relied upon unreliable market prices for thinly traded securities, unjustified prices of private transactions, and baseless and unrealistic projections and hypotheticals.

28. At all times relevant to this Complaint, the actual net asset value of Partners' holdings, without taking into account the influence of the manipulative trading and valuation practices, never exceeded the amount of principal deposited by investors in Partners. Thus, Partners lacked any excess profits with which to make distributions and redemptions to investors.

29. Nevertheless, Partners continued to honor redemption requests submitted by investors seeking to cash out the "profits" apparent from the artificially inflated net asset value of Partners' holdings.

30. On April 16, 2003 (the "Petition Date"), Partners commenced a Chapter 11 bankruptcy case (the "Bankruptcy Case") by filing a voluntary petition for relief under Chapter 11 of Title 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Connecticut (the "Connecticut Bankruptcy Court").

31. On January 9, 2004, Partners filed an Agreed Motion to Transfer Venue of the Bankruptcy Case to this Court (the "Motion to Transfer Venue").

32. On February 10, 2004, the Connecticut Bankruptcy Court entered an Order granting the Motion to Transfer Venue (the "Transfer Order").

33. Paragraph 2 of the Transfer Order provides that the Bankruptcy Case "is hereby transferred to the United States District Court for the Southern District of Florida to be administered by the District Court as a bankruptcy case under Title 11 and pursuant to 28 U.S.C. § 1334(a) through (c)."

34. The Defendant received the transfers identified on Exhibit "A' from or on behalf of Partners on the dates and in the amounts set forth in Exhibit "A."

35. Upon information and belief, some of the funds transferred to the Defendant may have been dissipated.

36. Upon information and belief, as of the time of the filing of this action, additional property transferred to the Defendant may still be in his/her/its possession or control. Accordingly, Partners hereby sues to recover the transfers identified on Exhibit "A" and all other transfers by Partners to the Defendant within the four-year period preceding the Petition Date (collectively the "Transfers").

## COUNT I
## ACTUAL FRAUDULENT TRANSFER
## 11 U.S.C. § 548(a)(1)(A) and 11 U.S.C. § 550

37. The Receiver incorporates by reference those allegations set forth in Paragraphs 1 through 36 above.

38. Partners made the Transfers to or for the benefit of the Defendant within one year prior to the Petition Date.

39. Lauer caused Partners to make the Transfers to the Defendant with the actual intent to hinder, delay and defraud the creditors of Partners.

40. The Defendant is the initial transferee of the Transfers and/or the entity for whose benefit the Transfer was made.

**WHEREFORE**, Partners demands judgment against the Defendant in the amount of the Transfers, together with prejudgment interest from the date of the Transfers, costs, all the relief set forth in 11 U.S.C. § 550 and any further relief that this Court deems just, fair, and equitable.

### COUNT II
### ACTUAL FRAUDULENT TRANSFER
### 11 U.S.C. § 544(b), Fla. Stat. §§ 726.105(1)(a)
### and 726.108 and other applicable law

41. The Receiver incorporates by reference those allegations set forth in Paragraphs 1 through 36 above.

42. Partners made the Transfers to or for the benefit of the Defendant within four years prior to the Petition Date.

43. Lauer caused Partners to make the Transfers to the Defendant with the actual intent to hinder, delay and defraud the creditors of Partners.

44. Partners did not receive reasonably equivalent value in exchange for the Transfers made to the Defendant.

**WHEREFORE**, Partners demands judgment against the Defendant in the amount of the Transfers, together with prejudgment interest from the date of the Transfers, costs, all the relief set forth in Fla. Stat. § 726.108 and other applicable law, and any further relief that this Court deems just, fair, and equitable.

## COUNT III
## CONSTRUCTIVE FRAUDULENT TRANSFER
## 11 U.S.C. § 548(a)(1)(B) and 11 U.S.C. § 550

45. The Receiver incorporates by reference those allegations set forth in Paragraphs 1 through 36 above.

46. Partners made the Transfers to or for the benefit of the Defendant within one year prior to the Petition Date.

47. Partners made the Transfers to or for the benefit of the Defendant without receiving reasonably equivalent value in exchange for such Transfers.

48. At the time the Transfers were made, Partners was insolvent.

49. At the time the Transfers were made, Partners was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with Partners was an unreasonably small capital.

50. At the time the Transfers were made, Lauer intended that Partners incur, or believed that it would incur, debts that would be beyond Partners' ability to pay as such debts matured.

51. The Defendant is the initial transferee of the Transfers and/or the entity for whose benefit the Transfers were made.

**WHEREFORE**, Partners demands judgment against the Defendant in the amount of the Transfers, together with prejudgment interest from the date of the Transfers, costs, all the relief set forth in 11 U.S.C. § 550 and any further relief that this Court deems just, fair, and equitable.

## COUNT IV
## CONSTRUCTIVE FRAUDULENT TRANSFER
**11 U.S.C. § 544(b), Fla. Stat. §§ 726.105(1)(b)
and 726.108 and other applicable law**

52.   The Receiver incorporates by reference those allegations set forth in Paragraphs 1 through 36 above.

53.   Partners made the Transfers to or for the benefit of the Defendant within four years prior to the Petition Date.

54.   Partners made the Transfers to or for the benefit of the Defendant without receiving reasonably equivalent value in exchange for such Transfers.

55.   Partners was insolvent at the time the Transfers were made.

56.   Partners made the Transfers to or for the benefit of the Defendant for less than fair consideration.

57.   The net assets of Partners were unreasonably small in relation to the Transfers.

58.   At the time the Transfers were made to or for the benefit of the Defendant, Lauer knew that Partners was insolvent, and that Partners would not be able to satisfy all of its liabilities as they came due.

59.   At the time the Transfers were made to or for the benefit of the Defendant, Partners was engaged in, or was about to engage in, a business or a transaction for which the remaining assets of Partners were unreasonably small in relation to the business or transaction.

60.   At the time the Transfers were made to or for the benefit of the Defendant, Lauer knowingly caused Partners to incur, or reasonably should have known that it would incur, debts beyond its ability to pay as they came due.

**WHEREFORE**, Partners demands judgment against the Defendant in the amount of the Transfers, together with prejudgment interest from the date of the Transfers, costs, all the relief

8

set forth in Fla. Stat. § 726.108 and other applicable law, and any further relief that this Court deems just, fair, and equitable.

## COUNT V
## CONSTRUCTIVE FRAUDULENT TRANSFER
## 11 U.S.C. § 544(b), Fla. Stat. §§ 726.106(1)
## and 726.108 and other applicable law

61.     The Receiver incorporates by reference those allegations set forth in Paragraphs 1 through 36 above.

62.     Partners made the Transfers to or for the benefit of the Defendant within four years prior to the Petition Date.

63.     Partners made the Transfers to or for the benefit of the Defendant without receiving reasonably equivalent value in exchange for such Transfers.

64.     Partners was insolvent at the time the Transfers were made, or became insolvent as a result of the Transfers.

**WHEREFORE**, Partners demands judgment against the Defendant in the amount of the Transfers, together with prejudgment interest from the date of the Transfers, costs, all the relief set forth in Fla. Stat. § 726.108 and other applicable law, and any further relief that this Court deems just, fair, and equitable.

## COUNT VI
## UNJUST ENRICHMENT

65.     The Receiver incorporates by reference those allegations set forth in Paragraphs 1 through 36 above.

66.     The Defendant has been unjustly enriched at the expense of Partners, by receiving the Transfers.

9

67. It would be inequitable to permit the Defendant to retain the benefit of the Transfers because the Transfers consisted of other investors' misappropriated contributions to Partners.

68. Additionally, it would be inequitable to permit the Defendant to retain the benefit of the Transfers because Partners did not receive reasonably equivalent value in exchange for the Transfers.

69. The Defendant was not entitled to the Transfers because the Transfers were obtained from the Transferor through Lauer's misconduct.

70. It would be inequitable to permit the Defendant to retain the benefit of the Transfers at the expense of Partners and other investors in and creditors of Partners.

**WHEREFORE**, Partners demands judgment against the Defendant in the amount of the Transfers, together with prejudgment interest from the date of the Transfers, costs, and any further relief that this Court deems just, fair, and equitable.

Dated: April 15, 2005

**HUNTON & WILLIAMS LLP**
*Attorneys for the Debtor*
1111 Brickell Avenue
Suite 2500
Miami, Florida 33131
Telephone: (305) 810-2500
Telecopier: (305) 810-2460

By: _____
Jeffrey P. Bast (FBN 996343)
Andrew D. Zaron (FBN 965790)

64036.000002 MIAMI 278026v2

10

## Exhibit A

| Fund | Payee Name | Transaction Date | Proceeds |
|---|---|---|---|
| Partners | Total Film Group Inc | 10/31/1997 | (75,000) |
| Partners | Total Film Group Inc | 3/27/1998 | (187,500) |
| Partners | Total Film Group Inc | 3/30/1998 | (100,000) |
| Partners | Total Film Group Inc | 4/3/1998 | 120,096 |
| Partners | Total Film Group Inc | 4/3/1998 | 171,994 |
| Partners | Total Film Group Inc | 8/15/2000 | (500,000) |
| Partners | Total Film Group Inc | 12/8/2000 | (500,000) |
| Partners | Total Film Group Inc | 9/28/2001 | 500,000 |
| Partners | Total Media Corp | 11/30/2001 | (50,000) |
| | **Partnership Total** | | **(620,410)** |
| Offshore | Total Film Group Inc | 3/27/1998 | (400,000) |
| Offshore | Total Film Group Inc | 4/3/1998 | (156,125) |
| Offshore | Total Film Group Inc | 4/3/1998 | (178,000) |
| Omnifund | Total Film Group Inc | 2/12/1999 | (1,000,000) |
| Omnifund | Total Film Group Inc | 3/19/1999 | (1,000,000) |
| Offshore | Total Film Group Inc | 9/27/1999 | (1,000,000) |
| Offshore | Total Film Group Inc | 10/8/1999 | (800,000) |
| Offshore | Total Film Group Inc | 1/27/2000 | 54,000 |
| Offshore | Total Film Group Inc | 3/6/2000 | (3,300,000) |
| Viator | Total Film Group Inc | 8/15/2000 | (250,000) |
| Offshore | Total Film Group Inc | 11/14/2000 | (400,000) |
| Omnifund | Total Film Group Inc | 11/14/2000 | (125,000) |
| Viator | Total Film Group Inc | 2/8/2001 | (150,000) |
| Offshore | Total Film Group Inc | 2/16/2001 | (150,000) |
| Offshore | Total Film Group Inc | 3/22/2001 | (50,000) |
| Offshore | Total Film Group Inc | 4/6/2001 | (50,000) |
| Offshore | Total Film Group Inc | 6/1/2001 | (500,000) |
| Offshore | Total Film Group Inc | 6/8/2001 | (600,000) |
| Omnifund | Total Film Group Inc | 7/19/2001 | 360 |
| Omnifund | Total Film Group Inc | 7/19/2001 | 720 |
| Omnifund | Total Film Group Inc | 7/19/2001 | 1,080 |
| Omnifund | Total Film Group Inc | 7/19/2001 | 1,440 |
| Omnifund | Total Film Group Inc | 7/19/2001 | 2,376 |
| Omnifund | Total Film Group Inc | 7/19/2001 | 2,880 |
| Omnifund | Total Film Group Inc | 7/19/2001 | 3,096 |
| Omnifund | Total Film Group Inc | 7/19/2001 | 3,600 |
| Omnifund | Total Film Group Inc | 7/19/2001 | 3,600 |
| Omnifund | Total Film Group Inc | 7/19/2001 | 4,680 |
| Omnifund | Total Film Group Inc | 7/19/2001 | 5,040 |
| Omnifund | Total Film Group Inc | 7/19/2001 | 6,039 |
| Omnifund | Total Film Group Inc | 7/19/2001 | 7,200 |
| Omnifund | Total Film Group Inc | 7/19/2001 | 7,200 |
| Omnifund | Total Film Group Inc | 7/19/2001 | 25,200 |
| Omnifund | Total Film Group Inc | 7/19/2001 | 180,000 |
| Offshore | Total Film Group Inc | 9/28/2001 | (1,658,750) |
| Offshore | Total Film Group Inc | 9/28/2001 | (41,250) |
| Offshore | Total Film Group Inc | 9/28/2001 | 400,000 |
| Offshore | Total Film Group Inc | 9/28/2001 | 150,000 |
| Offshore | Total Film Group Inc | 9/28/2001 | 50,000 |
| Offshore | Total Film Group Inc | 9/28/2001 | 600,000 |
| Viator | Total Film Group Inc | 9/28/2001 | (511,875) |
| Viator | Total Film Group Inc | 9/28/2001 | (13,125) |
| Viator | Total Film Group Inc | 9/28/2001 | 250,000 |
| Omnifund | Total Film Group Inc | 9/28/2001 | (50,000) |
| Viator | Total Film Group Inc | 9/28/2001 | (100,000) |
| Viator | Total Film Group Inc | 9/28/2001 | 125,000 |
| Viator | Total Film Group Inc | 9/28/2001 | 150,000 |
| Offshore | Total Film Group Inc | 10/29/2001 | (150,000) |
| Omnifund | Total Film Group Inc | 11/30/2001 | (50,000) |
| Offshore | Total Film Group Inc | 12/11/2001 | (5,000) |
| Offshore | Total Film Group Inc | 1/4/2002 | (100,000) |
| Offshore | Total Film Group Inc | 3/15/2002 | (1,650,000) |
| Offshore | Total Film Group Inc | 7/3/2002 | (225,000) |
| Offshore | Total Film Group Inc | 7/3/2002 | (300,000) |
| Offshore | Total Film Group Inc | 8/13/2002 | (970,500) |
| Offshore | Total Film Group Inc | 8/28/2002 | (2,100,000) |

## Exhibit A

| Fund | Payee Name | Transaction Date | Proceeds |
|---|---|---|---|
| Partners | Total Film Group Inc | 10/31/1997 | (75,000) |
| Partners | Total Film Group Inc | 3/27/1998 | (187,500) |
| Partners | Total Film Group Inc | 3/30/1998 | (100,000) |
| Partners | Total Film Group Inc | 8/15/2000 | (500,000) |
| Partners | Total Film Group Inc | 12/8/2000 | (500,000) |
| Partners | Total Media Corp | 11/30/2001 | (50,000) |
| **Total Film Group Inc Total** | | | **(1,412,500)** |

# CIVIL COVER SHEET

**05-60590**

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of the Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE SIDE OF THE FORM.)

**I.(a) PLAINTIFFS**

LANCER PARTNERS, L.P.

**DEFENDANTS**  CIV-COHN

TOTAL FILM GROUP, INC.

**(b) County of Residence of First Listed Plaintiff** Miami-Dade
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed _____
(IN U.S. PLAINTIFF CASES ONLY)

**(c) Attorney's (Firm Name, Address, and Telephone Number)**
Jeffrey P. Bast, Esquire
HUNTON & WILLIAMS LLP
Counsel for Plaintiff
1111 Brickell Avenue, Suite 2500
Miami, Florida 33131
Ph:  (305) 810-2500
Fax: (305) 810-2460

Attorneys (If Known)
Jeffrey P. Bast, Esquire

MAGISTRATE JUDGE SNOW

Based 05-60590 civ Cohn/SS

**(d) CIRCLE COUNTY WHERE ACTION AROSE:** DADE, MONROE, **BROWARD**, PALM BEACH, MARTIN, ST. LUCIE, INDIAN RIVER, OKEECHOBEE, HIGHLANDS

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☑ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|  | PL | DEF |  | PL | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐1 | ☐1 Incorporated or Principal Place of Business In This State | ☐4 | ☐4 |
| Citizen of Another State | ☐2 | ☐2 Incorporated and Principal Place of Business in Another State | ☐5 | ☐5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 Foreign Nation | ☐6 | ☐6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐610 Agriculture | ☐422 Appeal 28 USC 158 | ☐400 State Reapportionment |
| ☐120 Marine | ☐310 Airplane | ☐362 Personal Injury - Med. Malpractice | ☐620 Other Food & Drug | ☐423 Withdrawal 28 USC 157 | ☐410 Antitrust |
| ☐130 Miller Act | ☐315 Airplane Product Liability | ☐365 Personal Injury - Product Liability | ☐625 Drug Related Seizure of Property 21 USC | | ☐430 Banks and Banking |
| ☐140 Negotiable Instrument | ☐320 Assault, Libel & Slander | ☐368 Asbestos Personal Injury Product Liability | ☐630 Liquor Laws | **PROPERTY RIGHTS** | ☐450 Commerce/ICC Rates/etc. |
| ☐150 Recovery of Overpayment & Enforcement of Judgment | ☐330 Federal Employers' Liability | **PERSONAL PROPERTY** | ☐640 R.R. & Truck | ☐820 Copyrights | ☐460 Deportation |
| ☐151 Medicare Act | ☐340 Marine | ☐370 Other Fraud | ☐650 Airline Regs. | ☐830 Patent | ☐470 Racketeer Influenced and Corrupt Organizations |
| ☐152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐345 Marine Product Liability | ☐371 Truth in Lending | ☐660 Occupational Safety/Health | ☐840 Trademark | ☐810 Selective Service |
| ☐153 Recovery of Overpayment of Veteran's Benefits | ☐350 Motor Vehicle | ☐380 Other Personal Property Damage | ☐690 Other | | ☐850 Securities/Commodities/Exchange |
| ☐160 Stockholders' Suits | ☐355 Motor Vehicle Product Liability | ☐385 Property Damage Product Liability | **LABOR** | **SOCIAL SECURITY** | ☐875 Customer Challenge 12 USC 3410 |
| ☐190 Other Contract | ☐360 Other Personal Injury | | ☐710 Fair Labor Standards Act | ☐861 HIA (1395 ff) | ☐891 Agriculture Acts |
| ☐195 Contract Product Liability | | | ☐720 Labor/Mgmt. Relations | ☐862 Black Lung (923) | ☐892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐730 Labor/Mgmt. Reporting & Disclosure Act. | ☐863 DIWC/DIWW (405(g)) | ☐893 Environmental Matters |
| ☐210 Land Condemnation | ☐441 Voting | ☐510 Motions to Vacate Sentence | ☐740 Railway Labor Act | ☐864 SSID Title XVI | ☐894 Energy Allocation Act |
| ☐220 Foreclosure | ☐442 Employment | Habeas Corpus: | ☐790 Other Labor Litigation | ☐865 RSI (405(g)) | ☐895 Freedom of Information Act |
| ☐230 Rent Lease & Ejectment | ☐443 Housing/Accommodations | ☐530 General | | **FEDERAL TAX SUITS** | ☐900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐240 Torts to Land | ☐444 Welfare | ☐535 Death Penalty | ☐791 Empl. Ret. Inc. Security Act | ☐870 Taxes (U.S. Plaintiff or Defendant) | ☐950 Constitutionality of State Statutes |
| ☐245 Tort Product Liability | ☐440 Other Civil Rights | ☐540 Mandamus & Other | | ☐871 IRS-Third Party 26 USC 7609 | ☒890 Other Statutory Actions |
| ☐290 All Other Real Property | | ☐550 Other Rights | | | |
| | | ☐555 Prison Condition | | | |

**V. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

- ☑ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transfer from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
This is an action for damages brought by a Securities and Exchange Commission receiver appointed pursuant to 28 USC § 754 and 1692 to recover avoidable transfers and for unjust enrichment.

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION
**DEMAND:** $550,000.00 (as set forth in Plaintiff's Response to Requests for Admissions)
CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☐ YES  ✓ NO - No Jury Trial Requested

**VIII. RELATED CASE(S) IF ANY** (See instructions:)
JUDGE Kenneth A. Marra   DOCKET NUMBER 04-80211-CIV-MARRA

DATE 4/15/05   SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**
RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

$250.00   9/9244
04/15/05

JS 44 Reverse (Rev. 12/96)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS-44

Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I. (a) **Plaintiffs - Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residences of the "defendant" is the location of the tract of land involved.

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on attachment, noting in this section "(see attachment)".

II. **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction is based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States, are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens or different states. When box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

III. **Residence (citizenship) of Principal Parties.** This section of the JS-44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV. **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section IV below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

V. **Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

VI. **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause.

VII. **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII. **Related Cases.** This section of the JS-44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.